UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. 07-30109-01-KES |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER ADOPTING THE |
| vs. | ) | MAGISTRATE JUDGE'S |
| | ) | REPORT AND |
| TYRONE L. TOOLS, JR., | ) | RECOMMENDATION |
| | ) | |
| Defendant. | ) | |

Defendant, Tyrone L. Tools, Jr., is charged with one count of abusive
sexual contact with a minor in violation of 18 U.S.C. §§ 1153, 2244(a)(5) and
2246(3). He moves to suppress the statements he made to law enforcement
officers on September 10, 2007, September 12, 2007, and October 2, 2007.

The court referred the motion to suppress to Magistrate Judge Mark A.
Moreno pursuant to 28 U.S.C. § 636(b)(1)(B). Magistrate Judge Moreno
recommends that this court deny Tools' motion to suppress his statements.
Tools objects to the report and recommendation of Magistrate Judge Moreno.
The government has not objected to the report and recommendation.

**STANDARD OF REVIEW**

The court must make a de novo review "of those portions of the
[Magistrate's] report or specified proposed findings or recommendations to
which objection is made." 28 U.S.C. § 636(b)(1); see also United States v.
Lothridge, 324 F.3d 599 (8th Cir. 2003); Jones v. Pillow, 47 F.3d 251, 253 (8th

Cir. 1995).  28 U.S.C. § 636(b)(1) requires that when a party objects to the

report and recommendation of a magistrate judge concerning a dispositive

matter, "[a] judge of the court shall make a de novo determination of those

portions of the report or specified proposed findings or recommendations to

which objection is made."  Id.; see also Fed. R. Civ. P. 72(b).  After a de novo

review of the magistrate judge's report and recommendation and a review of the

record, the court accepts the report and recommendation of the magistrate

judge as supplemented herein.

## DISCUSSION

### I.    September 10, 2007, Statements

Tools objects to the magistrate judge's determination that his

September 10, 2007, statements were voluntary and that he knowingly,

voluntarily, and intelligently waived his Miranda rights before making those

statements.

#### A.    Voluntariness

Tools argues that the fact that he was hospitalized for significant mental

problems three days after he made the statements demonstrates that his

statements were involuntary.  In determining whether a statement is voluntary,

the court must consider the totality of the circumstances.  United States v.

Bordeaux, 980 F.2d 534, 538 (8th Cir. 1992).  In light of the totality of the

circumstances, a statement is not voluntary if "pressures exerted upon the

2

suspect have overborne his will." United States v. Meirovitz, 918 F.2d 1376, 1379 (8th Cir. 1990). The two factors that a court must consider when applying the "overborne will" doctrine are "the conduct of the law enforcement officials and the capacity of the suspect to resist pressure to confess." Id.

A confession is voluntary if it is "the product of an essentially free and unconstrained choice by its maker." Schneckloth v. Bustamonte, 412 U.S. 218, 225, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973). Conversely, "[a] statement is involuntary when it was extracted by threats, violence, or express or implied promises sufficient to overbear the defendant's will and critically impair his capacity for self-determination." United States v. Hyles, 479 F.3d 958, 966 (8th Cir. 2007). "[C]oercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." Colorado v. Connelly, 479 U.S. 157, 167, 107 S. Ct. 515, 93 L. Ed. 2d 473 (1986). "The government bears the burden of persuasion and must prove by a preponderance of the evidence that the challenged statements were voluntary." United States v. LeBrun, 363 F.3d 715, 724 (8th Cir. 2004).

Regardless of whether Tools' September 10, 2007, statements are inculpatory or not, Tools' mental state at the time the statements were made does not make his statements involuntary. "A defendant's mental condition alone is not enough to render a confession constitutionally involuntary; there

3

must be coercive police activity." <u>LaRette v. Delo</u>, 44 F.3d 681, 688-89 (8th Cir. 1995).  <u>See also</u> <u>Colorado v. Connelly</u>, 479 U.S. 157, 165-67 (1986).  Although the defendant's ability to resist interrogation pressures is relevant to the voluntariness inquiry, his mental condition alone cannot make the statements involuntary.  <u>Jenner v. Smith</u>, 982 F.2d 329, 333 (8th Cir. 1993).  A statement is not involuntary unless " 'the police extorted it from the accused by means of coercive activity.' " <u>Id.</u>

For example, in <u>United States v. Turner</u>, 157 F.3d 552, 555 (8th Cir. 1998), a case involving claims of involuntariness due to low IQ, PCP intoxication, and mental illness, the Eighth Circuit denied the defendant's motion to suppress his confession because the fact that the defendant was cooperative, reviewed and initialed each admonition of the waiver form, agreed to answer questions, and gave accurate information proved that the statements were voluntary.  Like in <u>Turner</u>, here Tools may have had mental problems, but he was cooperative, was able to carry on a conversation with the officers, and appeared to be acting normal.  Tools also did not make any statements about hallucinations and did not do anything unusual or bizarre while in the presence of Officer William Moran.  Docket 39-2, at 20-21.  Additionally, there is no evidence to suggest that Officer Moran was acting with the requisite degree of coercion to render Tools' statements involuntary.  Rather, Officer Moran testified that he did not make any threats to Tools and that he did not

4

brandish his firearm at any time on September 10, 2007, when in contact with Tools.  Id. at 17.  Accordingly, the court finds that Tools' September 10, 2007, statements were voluntary.

**B.    Validity of Miranda Rights Waiver**

Tools also argues that his September 10, 2007, statements were taken following an invalid Miranda waiver.  As such, Tools asserts that his statements should be suppressed as a violation of Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).  But Miranda does not preclude admission of statements that a defendant in custody volunteers that are not the product of any interrogation by the police.  Rhode Island v. Innis, 446 U.S. 291, 299-301, 100 S. Ct. 1682, 64 L. Ed. 2d 297 (1980).

Here, Officer Moran testified that he gave Tools the Miranda warnings and Tools heard him say that he had the right to remain silent.  Docket 39-2, at 19.  Officer Moran also testified that sometime thereafter Tools stated that he wanted to move back to Arizona, talked about living in White River, Arizona, and that such statements were not in response to questioning by him.  Id. at 22.  Further, the fact that Officer Moran did not include in his report any specific statements that Tools made supports the determination that Officer Moran did not ask Tools questions or initiate the conversation with Tools.  Id. at 18.  Moreover, Tools has presented no evidence to demonstrate that his

5

statements were made in response to questions posed by Officer Moran.  Thus, the court finds that Tools' September 10, 2007, statements are admissible.

## II.    September 12, 2007, Statements

Tools similarly objects to the magistrate judge's finding that his September 12, 2007, statements were voluntary and that he knowingly, voluntarily, and intelligently waived his <u>Miranda</u> rights.

### A.    Voluntariness

Tools argues that his statements were involuntary because the fact that he was suffering from a mental disability at the time of the interview demonstrates that he was subjected to police coercion.  Additionally, Tools argues that the credibility of the officers who interviewed him is questionable and therefore their testimony about his mental state during the interview should not be given great weight because there was a significant discrepancy between the officers' testimony in relation to whether Tools was offered an opportunity to provide a tape recorded or written statement after the interview.

With respect to Tools' mental condition at the time of the interview, "[p]ersonal characteristics of the defendant are constitutionally irrelevant absent proof of 'coercion brought to bear on the defendant by the State.' " <u>Sidebottom v. Delo</u>, 46 F.3d 744, 758 (8th Cir. 1995).  Special Agent Mark Fendrich testified that Tools appeared coherent, acted normal, and expressed concern about his safety in the detention facility because it was alleged that he

had molested a child.  Docket 39-2, at 33, 35-36.  Additionally, Investigator Laddimer Clifford testified that Tools seemed calm, was able to answer questions, and expressed concern about his safety in jail.  Id. at 57-58.  No evidence was presented that the officers acted with coercion that rose to the level necessary to render Tools' statements involuntary.  Instead, the evidence indicates that Tools was aware of what was happening and that Special Agent Fendrich and Investigator Clifford did not extract Tools' statements by threats, violence, or express or implied promises that overbore his will and critically impaired his capacity for self-determination.

The magistrate judge found the officers' testimony credible.  Although Tools argues that the credibility of the officers' testimony is questionable, because the magistrate judge was able to observe the officers testify, he is in a better position to opine on the officers' credibility.  As such the court gives deference to the magistrate judge's conclusions regarding the officers' testimony.  Further, the court finds that the discrepancies are not directly related to the mental state of Tools during the interview.  Moreover, while Special Agent Fendrich testified that he did not offer Tools the opportunity to provide a written statement after the interview and Investigator Clifford testified that Special Agent Fendrich did offer Tools the opportunity to provide a tape recorded or written statement after the interview, Investigator Clifford also admitted that he may have been confused about whether Special Agent

7

Fendrich did in fact offer Tools an opportunity for a tape recorded summary statement because he has worked with a lot of different FBI agents.  Docket 39-2, at 48, 65, 67-68.  Therefore, the court finds that Tools' September 12, 2007, statements were voluntary.

> ### B.    Validity of Waiver of <u>Miranda</u> Rights

Tools asserts that he did not knowingly, voluntarily, and intelligently waive his <u>Miranda</u> rights because he had severe mental problems when he was advised of his <u>Miranda</u> rights.  Tools argues that the fact that his mental state less than twenty-four hours after the interview was such that he was sent to the Human Services Center for immediate treatment and hospitalization leads to the conclusion that he did not validly waive his <u>Miranda</u> rights.

A criminal suspect may waive his constitutional rights protected by <u>Miranda v. Arizona</u>. 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). But the waiver must be voluntary, knowing, and intelligent, that is, it must be "the product of a free and deliberate choice rather than intimidation, coercion, or deception," and the suspect must have "a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." <u>United States v. Jones</u>, 23 F.3d 1307, 1313 (8th Cir. 1994).  The " 'totality of circumstances surrounding the interrogation' " guide the determination of whether a waiver was voluntary, knowing, and intelligent.  <u>Moran v. Burbine</u>, 475 U.S. 412, 421, 106 S. Ct. 1135, 89 L. Ed. 2d 410 (1986).  Here, because

the court has found that Tools was not intimidated, coerced, or deceived, the question is whether he sufficiently understood the nature and consequences of his waivers.

Based upon the totality of the circumstances, the court finds that Tools made a knowing and intelligent waiver of his Miranda rights before his September 12, 2007, statements to Special Agent Fendrich and Investigator Clifford.  Special Agent Fendrich advised Tools of his rights based upon an advice of rights form.  Tools indicated that he understood these rights and then Tools read his rights from the advice of rights form to Special Agent Fendrich and initialed by each enumerated right.  Docket 39-2, at 32.  Tools ultimately signed the form, indicating that he understood his rights and that he was waiving them.  Tools also verbally articulated that he understood what his rights were and that he was willing to answer questions without a lawyer present.  Id. at 32-33.  During the interview, Tools never indicated that he wanted to terminate the interview, that he wanted to remain silent, or that he wanted an attorney present prior to answering any questions.  Id. at 41, 42.

The fact that Tools was hospitalized less than twenty-four hours after the interview does not necessarily mean that Tools did not knowingly and intelligently waive his Miranda rights.  The court notes that Tools was able to answer questions about his educational background, his ability to read and write English, his medications, and his usage of drugs and alcohol.  Id. at 32.

9

Further, Tools was aware of what Special Agent Fendrich and Investigator Clifford were talking about because he offered to take a polygraph test. Tools was also aware of his surroundings because he expressed concern about his safety in jail as an alleged child molester. Id. at 35-36. Further, the fact that Special Agent Fendrich informed Tools of his constitutional rights and that Tools signed a waiver of rights form that Special Agent Fendrich explained in detail support a finding that Tools' subsequent hospitalization did not preclude his understanding the nature and significance of his constitutional rights. Accordingly, the court finds that Tools' waiver of his Miranda rights before making statements on September 12, 2007, was knowing and intelligent and therefore valid.

**III.    October 2, 2007, Statements**

Tools objects to the magistrate judge's conclusion that his Sixth Amendment right to counsel was not violated when Special Agent Fendrich and Investigator Clifford interviewed him on October 2, 2007. Tools also objects to the magistrate judge's determination that Officer Moran was not illegally performing tribal law enforcement duties when he arrested and questioned Tools on September 10, 2007.

**A.    Sixth Amendment Right to Counsel**

Tools argues that under United States v. Red Bird, 287 F.3d 709 (8th Cir. 2002), his October 2, 2007, statements should be suppressed because such

statements were taken in violation of his Sixth Amendment right to counsel. Tools argues that because he had been arraigned in tribal court and had been appointed a tribal attorney before his October 2, 2007, interview, the fact that his tribal attorney was not present during his October 2, 2007, interview violates his Sixth Amendment right to counsel. Tools also argues that there is a direct conflict between Special Agent Fendrich's testimony and Investigator Clifford's testimony in relation to whether Tools initiated the contact, thereby making the interrogation voluntary and the waiver of the right to counsel valid.

For purposes of this discussion, the court will assume that Special Agent Fendrich initiated the contact with Tools. The parties do not dispute that the tribal and federal charges encompass the same offense for Sixth Amendment purpose. Thus, the issue before the court is whether a tribal public defender, who is not a licensed professional attorney but who appears in tribal court, is "counsel" within the meaning of the Sixth Amendment.

The Sixth Amendment states: "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." "Whatever else it may mean, the right to counsel . . . means at least that a person is entitled to the help of a lawyer at or after the time that judicial proceedings have been initiated against him 'whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.' " Red Bird, 287 F.3d at 713 (quoting Brewer v. Williams, 430 U.S. 387, 389, 97 S. Ct. 1232, 51

11

L. Ed. 2d 424 (1977)).  As such, the Sixth Amendment right to counsel attaches at the commencement of adversarial proceedings against a defendant, "whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." Rothgery v. Gillespie County, Tex., _____ S. Ct. _____, 2008 WL 2484864, at *5 (U.S. 2008).  "Any statement about the charged crime that government agents deliberately elicit from a defendant without counsel present after the defendant has been indicted must be suppressed under the Sixth Amendment exclusionary rule." Red Bird, 287 F.3d at 713 (citing Massiah v. United States, 377 U.S. 201, 207, 84 S. Ct. 1199, 12 L. Ed. 2d 246 (1964)). But if the right to counsel has not attached, it is not a violation of the defendant's Sixth Amendment right to counsel to interview him without counsel present if proper precautions are taken.  See United States v. Edelmann, 458 F.3d 791, 804 (8th Cir. 2006) (stating "if the right to counsel has not attached, the defendant has no right to the effective assistance of counsel").

There is a clear distinction between licensed legal counsel and lay representation under the Sixth Amendment.  See Wheat v. United States, 486 U.S. 153, 159, 108 S. Ct. 1692, 100 L. Ed. 2d 140 (1988) (stating "[t]he Sixth Amendment right to choose one's own counsel is circumscribed in several important respects . . . [r]egardless of his persuasive powers, an advocate who is not a member of the bar may not represent clients . . . in court.").  The

12

United States Supreme Court did not extend the Sixth Amendment to encompass the right to be represented in court by a layman.  Id.  Additionally, every circuit which has considered the question, including the Eighth Circuit, has held there is no right to representation by persons who are not qualified attorneys.  See Pilla v. American Bar Ass'n, 542 F.2d 56, 58-59 (8th Cir. 1976) (affirming the district court opinion which determined that individuals in civil and criminal cases do not have a constitutional right to be represented by lay counsel).  See also United States v. Anderson, 577 F.2d 258, 261 (5th Cir. 1978) (stating "[t]here is no sixth amendment right to be represented by a non-attorney"); United States v. Scott, 521 F.2d 1188, 1191-92 (9th Cir. 1975) (determining that the word "counsel" in the Sixth Amendment guaranteeing an accused the right to have the assistance of counsel for his defense does not include friends or advisors of an accused who declines an attorney and represents himself); United States v. Grismore, 546 F.2d 844, 847 (10th Cir. 1976) (stating " '[c]ounsel' as referred to in the Sixth Amendment does not include a lay person, rather 'counsel' refers to a person authorized to the practice of law"); and United States v. Jordan, 508 F.2d 750, 753 (7th Cir. 1975) (stating "[t]he district court is not obligated to appoint counsel of defendant's choice where the chosen attorney is not admitted to practice").[1]

----

[1]Additionally, several courts have determined that representation by an individual who is not a licensed attorney is a per se violation of the Sixth Amendment right to effective counsel.  See United States v. O'Neil, 118 F.3d 65,

Several cases have addressed when a defendant's Sixth Amendment right to counsel attaches in relation to tribal court proceedings. In <u>United States v. Red Bird</u>, 287 F.3d 709 (8th Cir. 2002), the Eighth Circuit determined that the defendant's Sixth Amendment right to counsel attached when he appeared in tribal court with a licensed attorney. In <u>Red Bird</u>, the defendant had been charged with rape, arraigned on that charge, and was assigned a licensed attorney to represent him in tribal court. Subsequently an FBI agent, with the assistance of a tribal investigator, located the defendant and initiated an interview with him regarding the rape allegation. The defendant was then

---

70-71 (2d Cir. 1997) (stating that it is a per se violation of the Sixth Amendment "where the attorney was not licensed to practice law because he failed to satisfy the substantive requirements of admission to the bar"); <u>United States v. Mouzin</u>, 785 F.2d 682, 697 (9th Cir. 1986) (stating that an individual who had never been admitted to practice law and thus "who never acquired the threshold qualification to represent a client in court cannot be allowed to do so, and no matter how spectacular a performance may ensue, it will not constitute 'effective representation of counsel' for purposes of the Sixth Amendment"); <u>Solina v. United States</u>, 709 F.2d 160, 168-69 (2d Cir. 1983) (finding the graduate of an accredited law school who had failed the New York bar examination twice and had not been admitted to any other bar provided ineffective counsel under the Sixth Amendment); <u>United States v. Myles</u>, 10 F. Supp. 2d 31, 35 (D.D.C. 1998) (noting the "per se rule [under the Sixth Amendment] applies where the defendant is represented by an individual who has never been admitted to any court's bar"); and <u>United States v. Dumas</u>, 796 F. Supp. 42, 46 (D. Mass. 1992) (determining that "if a defendant is convicted while represented by someone *who has never been admitted to any court's bar*, that defendant is deemed to have been denied counsel as a matter of law"). Thus, if this court found the appointment of lay counsel to trigger the protections afforded by the appointment of "counsel" within the meaning of the Sixth Amendment, it would be fundamentally inconsistent with the general rule that an individual must be a licensed professional attorney before he can be considered effective counsel under the Sixth Amendment.

14

charged in federal court with sexual abuse based on the same facts underlying the rape charge in tribal court.  The district court suppressed the defendant's statement, concluding that his right to counsel had attached and had been invoked when he was arraigned on the rape charge in tribal court.  United States v. Red Bird, 146 F. Supp. 2d 993, 1008 (D.S.D. 2001).

The Eighth Circuit rejected the government's contention that Red Bird's Sixth Amendment right did not attach because the federal sexual abuse charge was not the same charge as the rape charge in tribal court for double jeopardy purposes.  Red Bird, 287 F.3d at 715-16.  The Eighth Circuit reached this conclusion after considering the evidence that the tribal charge had triggered the federal inquiry, tribal authorities had "worked in tandem" with the FBI to investigate the rape, the elements of the tribal and federal charges were essentially the same, and tribal sovereignty was unique and limited in nature. The court found that it was not dispositive that the two charges were brought by different sovereigns.  Id. at 714-15.  Most importantly, the Eighth Circuit determined that the tribal arraignment was an adversarial judicial proceeding in which the tribe "provide[d] a licensed attorney to represent indigent defendants in tribal court."  Id. at 716.  It concluded that because the defendant's right to counsel had attached and had been invoked in the tribal proceeding, the FBI was precluded from instigating a discussion with him in the absence of his counsel.  Id. at 716-17.

15

It is significant that in Red Bird the Eighth Circuit recognized that "[a]t the time Red Bird was interviewed, he had been indicted and had been appointed an attorney who was licensed to serve him in both tribal and federal court." 287 F.3d at 714. That is not the case here. In the present case, defendant was assigned lay counsel who is not licensed to practice law and therefore, could only serve him in tribal court and not federal court. As previously discussed, for purposes of the Sixth Amendment, lay counsel is not considered "counsel" under the Sixth Amendment. See Wheat, 486 U.S. at 159. Accordingly, the fact that defendant was not appointed a licensed attorney distinguishes this case from the facts in Red Bird.

The most recent and analogous case that has been decided in this district is United States v. Dupris, 422 F. Supp. 2d 1061, 1068 (D.S.D. 2006), in which the court determined the defendant's Sixth Amendment right to counsel did not attach when the defendant was arraigned in tribal court on the Cheyenne River Indian Reservation and pleaded not guilty with the assistance of lay counsel. In that case, the government argued that the individual who appeared with the defendant in tribal court was not law trained and was not a licensed attorney in any federal or state court and therefore, was not "counsel" for purposes of the Sixth Amendment. The defendant argued that despite the individual's educational shortcomings, she was sufficiently skilled to provide the defendant with the legal assistance required to protect his rights and thus,

16

was his "counsel." Id. at 1068. The court determined that the "[d]efendant's Sixth Amendment right to counsel was not triggered until he made his initial appearance in federal court." Id. The court further explained that "[s]tated another way, [d]efendant's right to counsel did not attach because he never appeared in tribal court with 'counsel' or a 'lawyer' prior to the . . . interrogation." Id.

The court concluded that "[a]lthough Defendant had been arraigned in tribal court and appeared with lay counsel there, this proceeding did not serve to trigger his right to counsel under the Sixth Amendment." Id. at 1069. The court further stated "[i]nasmuch as Defendant's Sixth Amendment right to counsel did not attach until his initial appearance in federal court, that right was not violated when [Special Agent] Trone questioned him without the presence of counsel." Id. at 1070. As in Dupris, in the present case, defendant was arraigned in tribal court and appeared with lay counsel, and therefore, defendant's Sixth Amendment right to counsel did not attach when defendant appeared in tribal court. Thus, defendant was never represented by "counsel" under the Sixth Amendment in the tribal court proceedings.

The court finds that the word "counsel" as used in the Sixth Amendment means a licensed professional attorney and not lay counsel. As such, Tools' Sixth Amendment right to counsel had not attached when Special Agent Fendrich and Investigator Clifford interviewed him on October 2, 2007.

17

Therefore, Tools' Sixth Amendment right to counsel was not violated.  Because the court has found that even if Special Agent Fendrich initiated the contact with Tools, Tools' Sixth Amendment right to counsel was not violated, the court finds it unnecessary to address the factual dispute regarding whether Special Agent Fendrich initiated contact with Tools or whether Tools initiated contact with Special Agent Fendrich.  Based on the above discussion, Tools' October 2, 2007, statements are admissible.

### B. Tribal Commission Issue

Tools argues that on September 10, 2007, Officer Moran was illegally performing tribal enforcement duties when he arrested and questioned Tools and therefore Tools' statements should be suppressed.  Officer Moran testified that although he was not issued his tribal commission card until January 2008, he had filled out the paperwork for a tribal card and was approved for the tribal card in March 2007, which is before he arrested Tools.  Docket 39-2, at 9-10.  He testified that it was his understanding that his tribal commission card was approved on March 27, 2007, but that he never actually received a formal commission card confirming its approval.  Officer Moran further testified that he was issued a tribal ID in March 2007, and he believed that the tribal ID was in lieu of the commission card.  Id. at 10.  Thus, the parties dispute whether Officer Moran was properly commissioned by the Rosebud Sioux Tribe (RST) on September 10, 2007, the day that he arrested Tools.

18

Even assuming that Officer Moran was not properly commissioned on September 10, 2007, and that therefore he was not acting in compliance with tribal law, the court finds that the tribal law violation did not affect the constitutionality of Tools' arrest or statements.  In federal prosecutions, "evidence seized in compliance with federal law is admissible without regard to state law."  United States v. Chavez-Vernaza, 844 F.2d 1368, 1374 (9th Cir. 1998).  The Eighth Circuit has extended this principle to the context of tribal law, determining that "[f]ederal law, not tribal or state law governs the admissibility of . . . evidence [in federal court]."  United States v. Hornbeck, 118 F.3d 615, 617 (8th Cir. 1997).

In Abbott v. City of Crocker, Missouri, 30 F.3d 994, 997 (8th Cir. 1994), an officer effected an arrest and subsequent search outside of city limits, despite his lack of authority to do so under Missouri law.  The court found that the arrest and subsequent search did not violate the Fourth Amendment:

> [T]he question here is not whether the search was authorized by state law.  The question is rather whether the search was reasonable under the Fourth Amendment.  Just as a search authorized by state law may be an unreasonable one under that amendment, *so may a search not expressly authorized by state law be justified as a constitutionally reasonable one.*

Id. at 997 (emphasis in original).

The court finds the logic in Abbott to be applicable to this case.  Like in Abbott, the reason Officer Moran's actions are in question is the result of tribal law.  It is well established that the RST has the power to authorize tribal

19

officers to enforce the law on their reservation and to require its officers to receive both a tribal ID and a tribal commission card.  The RST has the corresponding power to limit its police force to only those officers who have received a tribal commission card, just like the state of Missouri has the power to limit the jurisdictional boundaries of where its officers can make arrests. These limitations of power, however, are not constitutionally required.  The tribe's failure to promptly issue the tribal commission card, although it may have resulted in activity violative of tribal law by a noncommissioned officer, does not render the conduct of Officer Moran unconstitutional.[2]  Accordingly, the court finds that even assuming that Officer Moran did not possess a valid RST commission card when he arrested Tools, his noncommissioned status is not relevant to the constitutional inquiry in this case.  Thus, the fact that Officer Moran had not been issued a tribal commission card does not make any of Tools' statements inadmissible.

Based on the foregoing, it is hereby

---

[2]In Abbott, the court noted that in certain situations whether an officer complied with state law might be relevant, though not dispositive, in deciding whether police conduct was reasonable under the Fourth Amendment.  30 F.3d at 998.  See also United States v. Baker, 16 F.3d 854, 856 (8th Cir. 1994).  But the court finds that whether Officer Moran technically complied with the RST ordinance is not relevant to this court's constitutional determination.

ORDERED that the court adopts the Report and Recommendation of the Magistrate Judge (Docket 41) as supplemented herein, and defendant's motion to suppress (Dockets 14) is denied.

Dated June 27, 2008.

BY THE COURT:


/s/ *Karen E. Schreier*
KAREN E. SCHREIER
CHIEF JUDGE

21